613 A.2d 670

**WASHINGTON COUNTY, Appellant,**

v.

**PENNSYLVANIA LABOR RELATIONS BOARD, Appellee.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1992.

Decided Aug. 7, 1992.

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 996.

604

Alex E. Echard, for appellant.

John B. Neurohr, for appellee.

Before DOYLE and SMITH, JJ., and BARRY, Senior Judge.

SMITH, Judge.

Washington County (County) appeals from the September 18, 1991 order of the Court of Common Pleas of Washington County which affirmed the final order of the Pennsylvania Labor Relations Board (Board) certifying the Deputy Sheriffs' Association of Washington County (Association) as the exclusive representative of the collective bargaining unit of Washington County's full-time and regular part-time deputy sheriffs.

The issues raised on appeal are whether the County deputy sheriffs are "guards" under Section 604(3) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.604(3), which prohibits inclusion of any individual employed as a guard in a collective bargaining unit with other public employees;[1] whether the collective

---

1. Section 604(3) of PERA provides:

 **§ 1101.604. Appropriateness of public employer unit; determination**

 The Board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the board shall:

 . . . .

 (3) Not permit guards at prisons and mental hospitals, employes directly involved with and necessary to the functioning of the courts of this Commonwealth, or any individual employed as a guard to enforce against employes and other persons, rules to protect property of the employer or to protect the safety of persons on the employer's premises to be included in any unit with other public employes, each may form separate homogenous employe organizations with the

bargaining agreement entered into between the County and the Service Employees International Union, Local 585, AFL–CIO (SEIU), after the Association filed its petition for representation, barred the representation election; and whether the Association was estopped from pursuing its petition for representation because its members participated in the strike vote and ratification of the collective bargaining agreement.

On October 3, 1989, pursuant to Section 603(c) of PERA, 43 P.S. § 1101.603(c), the Association filed a petition for representation with the Board seeking exclusive representation of a collective bargaining unit of all full-time deputy sheriffs of the County. The Association alleged that it represented 30% or more of the deputy sheriffs employed by the County and requested a hearing to determine an exclusive collective bargaining representative. At the time of filing of the petition, SEIU was the collective bargaining representative of the unit consisting of all full-time and regular part-time court-related County employees including the deputy sheriffs. The existing collective bargaining agreement between the County and SEIU was scheduled to expire on December 31, 1989.

The Secretary of the Board dismissed the petition and refused to hold a hearing, concluding that the petitioned-for unit was inappropriate because the deputy sheriffs are not policemen. The Association timely filed exceptions to the Secretary's decision alleging, inter alia, that because the deputy sheriffs perform guard functions, they must be included in a separate bargaining unit pursuant to Section 604(3) of PERA. Thereafter, the Board remanded the matter to the Secretary of the Board for a hearing to resolve the factual issues raised by the Association. On May 29, 1990, the hearing examiner determined that the deputy sheriffs are "guards" and therefore must be included in a separate bargaining unit and issued an order directing the County to submit a list of employees eligible for inclusion in the bargaining unit of all full-time and

proviso that organizations of the latter designated employe group may not be affiliated with any other organization representing or including as members, persons outside of the organization's classification.

regular part-time deputy sheriffs.[2] The hearing examiner based his decision upon undisputed testimony that the deputy sheriffs were assigned to the picket line during a strike against the County by SEIU members.

On August 3, 1990, an election by secret ballot was held among thirteen eligible deputy sheriffs. On August 20, 1991, based upon the unanimous vote in favor of representation by the Association, the Board Representative issued a nisi order certifying the Association as the exclusive representative of the County's full-time and regular part-time deputy sheriffs. The County and SEIU filed exceptions which the Board dismissed in its final order. On appeal, the trial court affirmed the Board.

 This Court's scope of review of the Board's bargaining unit determination is limited to determining whether findings of fact are supported by substantial evidence and whether conclusions drawn from those facts are reasonable and not arbitrary, capricious or illegal. *Washington Township Municipal Authority v. Pennsylvania Labor Relations Board*, 131 Pa.Commonwealth Ct. 36, 569 A.2d 402, *appeal denied*, 525 Pa. 652, 581 A.2d 577 (1990). In reviewing the Board's decision, this Court must rely on the Board's expertise in the area of public labor relations to weigh and determine the facts. *School District of Township of Millcreek v. Millcreek Education Ass'n*, 64 Pa.Commonwealth Ct. 389, 440 A.2d 673 (1982).

The Board made the following pertinent findings of fact:

4. That since the mid–1980's the County has assigned deputy sheriffs to three County parks during the summer to protect the County's property there. (N.T. 26, 33–34, 46, 49, 111–113, 147, 152–153, 178, 180–181, 190.)

5. That during a strike by SEIU against the County in February 1990 the County's sheriff at the request of the County's commissioners assigned deputy sheriffs to the County's health center and jail to make sure that SEIU's

2. The hearing examiner, *sua sponte*, amended the petition to include regular part-time deputy sheriffs to avoid over-fragmentization of the bargaining unit. 43 P.S. § 1101.604(1)(ii).

picketers at those locations did not prevent employes and others from entering those job sites. (N.T. 31–32, 35–37, 39, 51–53, 59–60, 103–104, 169, 172, 197–198, 211.)

The County contends that the assignment of deputy sheriffs to the picket line during SEIU's two-week strike against the County does not justify the Board's finding that the deputy sheriffs are guards under Section 604(3) of PERA because their primary duty is court-related. The Board concedes that absent the evidence of assignment of the deputy sheriffs to the picket line during the strike, the Board would not have characterized the deputy sheriffs as guards. Under Section 604(3) of PERA, once the deputy sheriffs are determined to be guards, they must be included in a separate bargaining unit and their organization's affiliation with other employes' organizations is prohibited.

■ This Court set forth the necessary elements for determining whether employes are guards under Section 604(3) of PERA in *Erie County Area Vocational–Technical School v. Pennsylvania Labor Relations Board,* 52 Pa.Commonwealth Ct. 388, 417 A.2d 796 (1980), which involved security/maintenance workers employed by a school. This Court stated:

[C]haracterization of the employes as 'guards' under the Act is not solely dependent on whether their main function is the enforcement of the employer's rules against other employes. The critical element of the 'guard' function is that the employes are responsible for enforcing the employer's rules to protect the employer's property. During a strike or labor dispute this could mean possibly protecting the employer's property from striking employes; there the divided loyalty problems which necessitate the guards' exclusion from the bargaining unit could become apparent.

*Id.* at 393–94, 417 A.2d at 798. This Court held that the employes were guards and properly excluded from the unit because they were responsible for protecting equipment and the premises from unauthorized entrance. The purpose of the requirement that guards be separated from other employes in collective bargaining is to ensure that during strikes or labor unrest, "the employer would have 'guards' who could

enforce rules for the protection of property and safety of persons without being confronted with a division of loyalty between the employer and dissatisfied fellow union members." *Township of Falls v. Pennsylvania Labor Relations Board,* 14 Pa.Commonwealth Ct. 494, 498, 322 A.2d 412, 414 (1974).

█ In the matter sub judice, it is undisputed that during the SEIU strike against the County, the deputy sheriffs who were also SEIU members were assigned to the picket line on a twenty-four hour basis to protect County property and to secure free access to County facilities for other employees and the public. A deputy sheriff testified that on one occasion, he physically removed the picketers to permit vehicles to enter the County's health center. Thus, the evidence shows that a division of loyalty actually occurred and was not a mere possibility which *Erie County Area Vocational–Technical School* and *Township of Falls* held was sufficient to mandate a separate bargaining unit.[3]

To support its contention that the deputy sheriffs are not guards under Section 604(3), the County relies upon the Board's prior decisions in *Bucks County,* 21 Pa. P.E.R. 21039 (1990) and *Montgomery County,* 13 Pa. P.E.R. 13252 (1982), which determined that the deputy sheriffs were not guards because their duties did not go beyond court-related security functions. The evidence in those cases demonstrated that the deputy sheriffs were periodically called upon to control disturbances outside the courtroom; enforced the no-smoking policy; assisted in evacuation of the building during bomb threats; and assisted court personnel during fires or fire drills. Hence, the County's reliance upon the aforementioned decisions is misplaced because during the previous labor dispute, the deputy sheriffs actually performed duties which went

3. The County argues that there is no possibility of divided loyalty because members of a court-related bargaining unit are prohibited from striking. 43 P.S. § 1101.1001. However, a determination of whether the deputy sheriffs are guards is not dependent upon the union members' right to strike. Once the employees are classified as guards, they are prohibited under Section 604(3) from being represented by the union which also represents other public employees, regardless of the employees' right to strike.

beyond the usual court-related security functions and thereby implicated actual conflicts of loyalty.

The County further contends that the collective bargaining agreement entered into between the County and SEIU in March 1990 barred a representation election because the Association failed to timely raise a representation issue on the basis of the deputy sheriffs' status as guards. The County's position is simply not supported by the record. The petition was filed within the thirty-day window period provided in Section 605(7)(ii) of PERA, 43 P.S. § 1101.605(7)(ii),[4] setting forth "all full-time professional deputy sheriffs" as a unit for which it sought an exclusive representation. In the letter attached to the petition, the Association alleged that the deputy sheriffs fall within the classification of guards under Section 604(3). Moreover, the Board remanded the matter for a hearing to resolve factual issues, raised in timely-filed exceptions, pertaining to guard functions performed by the deputy sheriffs. Therefore, the representation issue was timely raised by the Association.

■ Finally, the County argues, without citing any authority, that the Association must be estopped from pursuing the representation petition because members of the Association were represented by SEIU during the course of collective bargaining between the County and SEIU, and those members actively participated in the strike vote and ratification of the agreement. When a petition for representation is timely filed during the thirty-day window period beginning ninety days prior to expiration of a collective bargaining agreement, the execution of a new collective bargaining agreement between the employer and incumbent union does not operate as a contract bar when the Board later certifies the rival union as an exclusive bargaining representative. *Richland School District v. Pennsylvania Labor Relations Board,* 71 Pa.Commonwealth Ct. 45, 454 A.2d 649 (1983). A rival union may file an

4. Section 605(7)(ii) provides in pertinent part:
 (ii) Petitions for elections may be filed with the board not sooner than ninety days nor later than sixty days before the expiration date of any collective bargaining agreement or after the expiration date until such time as a new written agreement has been entered into.

unfair labor practice charge against an employer who continues to bargain with the incumbent union. *Id.* However, members of the union are not precluded from participating in the collective bargaining process until their union is decertified by the Board. Therefore, the County's contention that the Association was estopped from pursuing the representation petition is without merit.

Accordingly, the order of the trial court is affirmed.

## ORDER

AND NOW, this 7th day of August, 1992, the order of the Court of Common Pleas of Washington County dated September 18, 1991 is affirmed.